IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TERRY L. S. DORSEY | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. L-06-2040 |
| | : | |
| PSYCH-ASSOCIATE HEIDT | : | |
| PSYCH-ASSOCIATE ECKHAUSER | : | |
| Defendants. | : | |

**MEMORANDUM**

Pending are (i) Terry L.S. Dorsey's ("Dorsey") Motion for Injunctive Relief and (ii) Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Because the issues have been fully briefed, a hearing is unnecessary. See Local Rule 105.6. (D. Md.). The record demonstrates that prison officials have provided Dorsey with a constitutionally appropriate level of psychological and psychiatric care. Accordingly, the Court will, by separate Order, GRANT Defendants' motion and DENY Dorsey's motions.

**I.    Background**

On August 7, 2006, Dorsey filed this complaint under 42 U.S.C. § 1983 seeking compensatory damages and injunctive relief (transfer to proper facility for treatment).[1] (Docket No. 1). He claims that since his October 14, 2005 transfer to the Maryland Correctional Adjustment Center ("MCAC") he has been denied adequate mental health care by the psychiatric staff. (Id.). Dorsey

---

[1] Section 1983 authorizes a plaintiff to bring a civil suit against anyone "acting under color of state law" who has deprived him of a right, privilege or immunity secured by the Constitution, laws or treaties of the United States.

further complains that in July 2006, Defendant Christy Heidt, a psychology associate,[2] discontinued his anger management therapy.[3]  He also contends that in September 2006, Defendants retaliated by refusing to treat him even though he had reported having homicidal thoughts. (Id.).  On December 18, 2006, Defendants moved to dismiss or for summary judgment on all counts.[4]

## II.     Standard of Review

The Court may grant summary judgment under Rule 56 when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). In determining whether a genuine issue of material fact exists, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. See Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

## III.    Analysis

---

[2]     According to the Job Announcements for the Maryland Department of Public Safety and Correctional Services, a Psychology Associate I is the beginning level of work in a correctional institution for a staff psychologist with a master's degree in psychology or a related field.

[3]     In his injunctive relief request, Dorsey claims that in September of 2006, psychology associates refused to examine him for homicidal thoughts because he filed this lawsuit. (Docket No. 8).  His opposition response also seeks injunctive relief (transfer to residential, long-term mental health facility). (Docket No. 14).

[4]     Defendants have attached a declaration and extensive exhibits to their motion, converting it into one for summary judgment. See Fed R. Civ. 12(b).

Deliberate indifference to the serious medical needs of prisoners is proscribed by the Eighth Amendment.[5] Prisoners are entitled to necessary, albeit limited, psychiatric treatment under certain circumstances.[6] The Constitution may entitle a prisoner to psychiatric or psychological treatment if a "physician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable medical certainty (i) that the prisoner's symptoms evidence a serious disease or injury; (ii) that such disease or injury is curable or may be substantially alleviated; and (iii) that the potential for harm to the prisoner by reason of delay or denial of care would be substantial." Bowring v. Godwin, 551 F.2d 44, 47 (4th Cir. 1977).  The right is limited to care which can be provided on a reasonable cost and time basis. See id. at 48.  The evidence here clearly demonstrates that Dorsey has received an appropriate level of psychiatric and psychological care during his confinement at MCAC.[7]

Evidence presented by Defendants demonstrates that from October 14, 2005, when Dorsey was transferred to MCAC, through November 17, 2006, Dorsey was seen by MCAC's psychology staff thirteen times and by the psychiatry department eight times.   (Docket No. 12, Ex. 1 at Eckhauser Decl. & Mental Health Record).    He has been prescribed the anti-depressant Prozac and the anti-psychotic medication Trilafon during his MCAC confinement.  (Id.).

---

[5] See Estelle v. Gamble, 429 U.S. 97 (1976).

[6] See Bowring v. Godwin, 551 F.2d 44 (4th Cir. 1977).

[7] Defendants argue that the prisoner Complaint is subject to dismissal for the failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a).  Because the case may be dismissed on the merits, the Court need not resolve the exhaustion issue.

3

Dorsey was initially seen by Defendant Carrie Eckhauser ("Eckhauser"), a psychology associate, four days after his admission to MCAC, and was referred to the psychiatrist due to a self-reported history of schizophrenia.  Defendants state, however, that during his incarceration only one psychiatrist has diagnosed Dorsey as schizophrenic.  (Id.).  The other clinicians who examined Dorsey have diagnosed him with Malingering and/or Adjustment Disorder.  The MCAC psychology and psychiatry department's current diagnoses of Dorsey include Adjustment Disorder with Mixed Disturbance of Emotion and Conduct, Antisocial Personality Disorder, Adjustment Disorder with Depressed Mood, Impulse Control Disorder, and a potential psychotic disorder.[8] (Docket No. 12, Ex. 1 at Eckhauser Decl. & Mental Health Record).

With respect to the summer and fall of 2006, the record demonstrates that Dorsey was seen by Eckhauser on August 25 and August 29, 2006.  Eckhauser found him to be alert and oriented in all spheres and in good contact with reality.  In addition, Dorsey showed no overt evidence of formal thought disturbance, and he denied suicidal and homicidal ideation.  (Id.).

Contrary to Dorsey's allegations that he was denied care in September of 2006, the record also shows that he was seen by a psychiatrist on September 27, 2006.  (Id.).  According to the medical records, Dorsey "[stated] that he [had] been feeling great," that his medications were working, and that he was not having hallucinations or paranoid ideation.  (Id.).  The psychiatrist found Dorsey to be alert, oriented, calm, pleasant, cooperative, coherent, and in contact with reality.  (Id.).

---

[8] The final diagnosis is "intermittent diagnosis of rule out Psychotic NOS ("not otherwise specified")."

A month later, on October 13, 2006, Eckhauser saw Dorsey and found him to be alert, cooperative, and well oriented. (Docket No. 12, Ex. 1 at Eckhauser Decl. & Mental Health Record). Although Dorsey reported hearing voices, there was no objective evidence suggesting that he was responding to internal stimuli. (Id.). Dorsey denied feeling suicidal. Although he expressed a "generalized homicidal ideation," he had no immediate plan or specific target in mind. Eckhauser did not consider Dorsey to be a danger to himself or others at that time. (Id.). Dorsey requested the resumption of his anger management sessions, from which he had been terminated in July 2006, due to his inappropriate behavior.[9] (Id.). Eckhauser agreed that the sessions would resume as long as Dorsey's language and behavior remained appropriate. (Id.). The sessions resumed on November 17, 2006. (Id., Ex. 1 at Eckhauser Decl.).

Dorsey is not entitled to self-diagnose or to request unlimited psychiatric care. MCAC's staff have diagnosed Dorsey with various disorders, and they are treating him accordingly. Although they schedule Dorsey's appointments on a monthly basis, they have seen him more frequently on several occasions. In these instances he was found to be oriented, in no acute distress, and no danger to himself or others. His homicidal impulses are controllable with the course of treatment provided. Dorsey also receives anger management counseling and is prescribed appropriate medications. Nothing more is constitutionally required. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985);

---

[9] Eckhauser alleges that the anger management classes were discontinued in July 2006, because of Dorsey's "failure to grasp the anger concepts by justifying his anger responses by acting on his impulses in an antisocial manner," such as banging on his cell door, covering his cell window, and writing a novel with violent passages. (Docket No. 12, Ex. 1 at Eckhauser Decl.)

Bowring, 551 F.2d at 47. Accordingly, Dorsey has failed to establish a violation of the Eight Amendment.[10]

**IV.   Conclusion**

For the foregoing reasons, the Court will, by separate Order:

(i)   GRANT Defendants' Motion for Summary Judgment (Docket No. 12),

(ii)  ENTER judgment in favor of Defendants and against Dorsey,

(iii) DENY Dorsey's motions for injunctive relief (Docket Nos. 8 and 14), and

(iv)  DIRECT the Clerk to CLOSE this case.

Dated this 25th day of June, 2007.

/s/
Benson Everett Legg
Chief Judge

---

[10] In his Opposition, Dorsey raises an eleventh-hour claim that his rights under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12312, have been violated. (Docket No. 14). He also claims for the first time that the level of mental health staffing at MCAC is inadequate. (Id.). To the extent that Dorsey is seeking to amend his Complaint to include these new claims after the filing of Defendants' responsive pleading, he shall not be permitted to so do. See Fed. R. Civ. P. 15(a). Also, Dorsey's amended allegation under the ADA does not state a claim under that statute. Dorsey does not claim that the he has been denied access to services or programs because he is disabled. Rather, he is claiming that Defendants have failed to provide adequate medical treatment for an alleged disability. This does not set out an ADA violation. See Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996); McNally v. Prison Health Servs., 46 F.Supp.2d 49, 58 (D. Me. 1999).